UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THEODORE W., | ) |
| Plaintiff, | ) No. 22-cv-7150 |
| v. | ) Magistrate Judge Beth W. Jantz |
| MARTIN J. O'MALLEY, Commissioner of the Social Security Administration,[1] | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Theodore W.[2] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability benefits. The parties have filed cross motions for summary judgment. As detailed below, Plaintiff's motion for summary judgment (Dkt. 15) is GRANTED, and the Commissioner's motion for summary judgment (Dkt. 18) is DENIED. This case is remanded for further proceedings consistent with this Order.

**I.    Background**

Plaintiff filed for disability insurance benefits on August 29, 2019, alleging a disability onset date of April 20, 2019. (Administrative Record ("R.") 14.) Plaintiff's application was denied initially and upon reconsideration. (*Id.*) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on February 8, 2022. (*Id.*) On March 21, 2022, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled as defined in the Social Security Act. (R. 14-24.) The Appeals Council denied Plaintiff's request for review on May 31,

---

[1] On December 23, 2023, Martin J. O'Malley was sworn in as Commissioner of the Social Security Administration; pursuant to Federal Rule of Civil Procedure 25(d)(1), he is substituted for his predecessor, Kilolo Kijakazi, as the proper defendant for this action.
[2] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name(s).

2022 (R. 8-9), leaving the ALJ's decision as the final decision of the Commissioner, reviewable by the District Court under 42 U.S.C. §405(g); *see Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

The ALJ's opinion followed the five-step analytical process required by 20 C.F.R. §404.1520(a)). At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 20, 2019. (R. 16.) At Step Two, the ALJ found Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine with radiculopathy; cervicalgia; cirrhosis of the liver; central vision loss of the right eye with normal vision fields; uncontrolled hypertension; history of hepatitis C; migraines; and obesity. (R. 16.) At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. (R. 18.) Before Step Four, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations: never crawl or climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, balance, stoop, crouch, and kneel; frequently reach, handle objects (gross manipulation) and finger (fine manipulations); avoid concentrated exposure to dangerous moving machinery and must avoid all exposure to unprotected heights; and limited to occupations that do not require depth perception. (R. 19.) At Step Four, the ALJ determined Plaintiff was unable to perform any of his past relevant work as a machinist. (R. 22.) At Step Five, the ALJ found there were jobs in significant numbers in the national economy that Plaintiff can perform, given his age, education, work experience, and residual functional capacity. (R. 23.) In light of these findings, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. (R. 24.)

II.     **Standard of Review**

In disability insurance benefits cases, a court's scope of review generally is limited to

deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence. *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Biestek v. Berryhill*, 587 U.S. 97, 102, 139 S. Ct. 1148, 1154, 203 L.Ed.2d 504 (2019)). While reviewing the Commissioner's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Id.* at 1052-53 (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). On the other hand, the Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also* 42 U.S.C.§ 405(g).

**III.    Discussion**

For claims filed after March 27, 2017, the old "treating physician rule"[3] has been replaced by 20 C.F.R. § 404.1520c. Treating physicians' opinions are no longer entitled to presumptive controlling weight; the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §404.1520c(a). Now, the Commissioner does not "articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your record;" instead, the ALJ "will articulate how [the ALJ] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in" the regulation. 20 C.F.R. §404.1520c(b)(1). Consistency and supportability "are the most important

---

3    20 C.F.R. §404.1527.

3

factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be," and, "[t]herefore we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. §404.1520c(b)(2). The ALJ may consider the other factors (*e.g.*, the treating relationship or the provider's specialty), but is not required to do so. *Id.*

Plaintiff's treating physician Dr. Jeffrey Olson, M.D., submitted a residual functional capacity statement in November 2019. (R. 508-510.) Dr. Olson noted that he had been seeing Plaintiff monthly since April 2019 for right sided sciatica, cervical strain, and upper back pain.[4] (R. 508.) He wrote that Plaintiff's pain was a 7 out of 10 "most times" and that "walking one city block makes back pain worse." (*Id.*) Dr. Olson cited low back tenderness to palpation and a positive right sided straight leg raise test at 5-10 degrees as the clinical findings that supported his limitations. (*Id.*) Dr. Olson opined that Plaintiff could only sit or stand for five minutes before needing to change positions and could sit and stand/walk for only up to two hours in an eight-hour working day. (R. 508-09.) Additionally, Dr. Olson believed that Plaintiff would need to walk for two minutes once every 30 minutes and that he would need a job that permitted shifting positions from standing, sitting, or walking and would also need to take unscheduled breaks. (R. 509.)

The ALJ analyzed Dr. Olson's opinion as follows:

> The undersigned finds his opinion unpersuasive and an underestimate of the claimant's residual functional capacity. This is supported by his own treatment notes that do not reflect symptoms so severe that they would cause this great a limitation (Exhibits 4F/16-17, 5F/31, 39). As discussed earlier his opinion is not fully supported by the claimant's response to physical therapy and the findings by other providers that do not suggest the claimant is as limited as suggested by Dr. Olson (Exhibit 6F).

---

[4] Plaintiff worked as a machinist and reportedly injured his back while lifting 115x15.5 inch 10-gauge stainless steel. (R. 487).

(R. 22.)

As noted above, the most important factors for an ALJ to consider are supportability and consistency with the record. Although it is not entirely clear which factor the ALJ's discussion of Dr. Olson's own treatment records was intended to reach,[5] the Court does not believe that the records cited by the ALJ demonstrate that Dr. Olson's opinions are either unsupportable or inconsistent with the notes the ALJ cited. To the contrary, the records appear to bolster Dr. Olson's opinions. For example, at the August 7, 2019 visit cited by the ALJ (R. 403-404, Exhibit 4F at 16-17), Dr. Olson's note states that Plaintiff reported that he had "debilitating sharp pain across the back that will go into his buttock" that prevented him "from standing or walking long distances." (R. 402.) On physical examination, Plaintiff showed decreased lumbar range of motion, tenderness to palpation, and positive straight leg tests. (R. 403-404.)

The ALJ also cited a visit from October 2, 2019. (R. 479, Exhibit 5F at 31.) Again, Plaintiff complained he had low back pain radiating into his legs and that he could not "stay on his feet . . . for more than an hour per day." (R. 478.) Although he showed a normal range of motion and was limping "much less," he had tenderness to palpation in his low back and his straight leg test was "positive bilaterally at 10 degrees." (R. 479.)

Finally, at the visit on June 21, 2019, (R. 487-488, Exhibit 5F at 39), Dr. Olson noted that

---

[5] Supportability concerns "the objective medical evidence and supporting explanations presented by a medical source . . . to support his or her medical opinion," whereas consistency concerns whether the medical opinion is consistent "with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2)-(3). The ALJ's opinion uses the term "supported" but does not mention consistency. (R. 22.) However, the portion of the analysis relating to Dr. Olson's notes appears to touch on the issue of supportability because it discussed whether Dr. Olson's own records support his opinion. Meanwhile, the discussion of physical therapy and other providers appears to go to consistency because it compares Dr. Olson's opinion to other sources in the record. In any event, as discussed below, the ALJ failed to adequately explain how Dr. Olson's opinion is not supportable or inconsistent with his treatment notes.

Plaintiff claimed it was "not as hard to stand" due to physical therapy, but that his back pain had not improved, and he was still limping. Even with the improvement with standing, Plaintiff reported to Dr. Olson that he could not "stay on feet very long – like 10 minutes only" and continued to have radiating back pain. (R. 487.) His physical examination was virtually identical to the October 2019 visit, with normal range of motion and "much less" limping, but tenderness to palpation in the low back and a straight leg test that was "positive bilaterally at 10 degrees." (R. 487-88.)

The Court is uncertain how these records – which appear to graft directly onto Dr. Olson's RFC statement – show that Dr. Olson's opinions are not supportable or consistent. To be clear, the problem here is not that the Court simply disagrees with the ALJ's findings; it is that the Court cannot determine which part(s) of these records the ALJ believes demonstrate that Dr. Olson's opinions are not persuasive. If the ALJ had explained *how* these records proved that Dr. Olson's opinion was not consistent or not supportable, the Court would not have to remand, provided that the explanation was supported by substantial evidence. However, the ALJ states that the ALJ's decision is "supported by [Dr. Olson's] own treatment notes that do not reflect symptoms so severe that they would cause this great a limitation" and a citation to the records discussed above. (R. 22.) But when the Court reviewed the cited records, it could not figure out how those records supported the ALJ's conclusion, and the analysis by the ALJ sheds no further light on the matter. Because the ALJ failed to explain how the evidence in the record led to the finding that Dr. Olson's opinion was not supportable or consistent with the record, the Court remands for further proceedings.

6

**IV.   Conclusion**

Plaintiff's motion for summary judgment (Dkt. 15) is GRANTED, and the Commissioner's motion for summary judgment (Dkt. 18) is DENIED.  This case is remanded for further proceedings consistent with this Order.

E N T E R:

Dated:  9/16/24

_____
BETH W. JANTZ
United States Magistrate Judge